**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

MELISSA CHAPMAN,         )
         )
      Plaintiff,     )
         )
vs.         )   Case No. 16-cv-015-JPG-CJP
         )
NANCY A. BERRYHILL,     )
Acting Commissioner of Social Security,   )
         )
      Defendant.[1]   )

**MEMORANDUM and ORDER**

In accordance with 42 U.S.C. § 405(g), plaintiff Melissa Chapman, represented by counsel, seeks judicial review of the final agency decision denying her application for Disability Insurance Benefits (DIB) pursuant to 42 U.S.C. § 423.

**Procedural History**

Ms. Chapman applied for DIB in April 2013, alleging disability beginning on November 5, 2012. After holding an evidentiary hearing, ALJ Denise M. Martin denied the application on August 11, 2014. (Tr. 31-40). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

**Issues Raised by Plaintiff**

Plaintiff raises the following points:

1.    The ALJ erred in erred in assessing plaintiff's credibility.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. See, *Casey v. Berryhill*, __ F3d. __, 2017 WL 398309 (7th Cir. Jan. 30, 2017). She is automatically substituted as defendant in this case. See Fed. R. Civ. P. 25(d); 42 U.S.C. §405(g).

2.      The opinions of two state agency reviewing consultants did not provide substantial evidence to support the RFC assessment.

**<u>Applicable Legal Standards</u>**

To qualify for DIB, a claimant must be disabled within the meaning of the applicable statutes.   For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."   42 U.S.C. §423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.   42 U.S.C. §423(d)(3).   "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit.   20 C.F.R. §404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled.   The Seventh Circuit Court of Appeals has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.   *Craft v. Astrue,* 539 F.3d 668, 673 (7th Cir. 2008).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.   20 C.F.R. §404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009); *Schroeter v. Sullivan*, 977 F.2d 391, 393 (7th Cir. 1992).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.   If the claimant does not have a listed impairment at step three, and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.   *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984).   *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made.   It is important to recognize that the scope of review is limited.   "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g).   Thus, this Court must determine not whether Ms. Chapman was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were

made.   See, *Books v. Chater*, 91 F.3d 972, 977-78 (7th Cir. 1996) (citing *Diaz v. Chater*, 55 F.3d 300, 306 (7th Cir. 1995)).   This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."   *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ.   *Brewer v. Chater*, 103 F.3d 1384, 1390 (7th Cir. 1997); *Moore v. Colvin*, 743 F.3d 1118, 1121 (7th Cir. 2014).   However, while judicial review is deferential, it is not abject; this Court does not act as a rubber stamp for the Commissioner.   See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## The Decision of the ALJ

ALJ Martin followed the five-step analytical framework described above.   She determined that Ms. Chapman had not been engaged in substantial gainful activity since the alleged onset date, and that she was insured for DIB through December 31, 2017.   She found that plaintiff had a spine disorder which was a severe impairment but which did not meet or equal a listed impairment.   She found that plaintiff also had depression, anxiety and headaches, but these were non-severe impairments.

The ALJ found that Ms. Chapman had the residual functional capacity (RFC) to perform work at the sedentary exertional level, but she required a sit/stand option and was limited to no climbing of ladders, ropes or scaffolds; occasional climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; and no work at unprotected heights or around moving machinery.   Based on the testimony of a vocational expert, the ALJ concluded

that plaintiff could not do her past work, but she was not disabled because she was able to do other jobs which exist in significant numbers in the national and regional economies.

### The Evidentiary Record

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order.   The following summary of the record is directed to the points raised by plaintiff.

**1.    Agency Forms**

Plaintiff was born in 1969 and was 43 years old on the alleged date of onset.   (Tr. 163).

Plaintiff said she was unable to work because she had a neurostimulator implanted on March 26, 2013.   (Tr. 176).   She had worked as a produce manager, meat cutter, and cashier at a grocery store.   (Tr. 188).

**2.    Evidentiary Hearing**

Ms. Chapman was represented by a non-attorney representative at the evidentiary hearing on July 31, 2014.   (Tr. 31, 9).   Plaintiff was 45 years old at the time of the hearing.   She lived with her fiancé.   (Tr. 10-11).   She testified that she was unable to work because of back pain and nerve pain in her legs.   She had a neurostimulator implant and had undergone physical therapy and injections in her back.   Three or four days a week, she had "bad days" when she stayed in bed or just sat on the couch.   (Tr. 13-15).   She watched television, read, and used her computer to check emails and post to Facebook.   She was able to sit at the computer for only twenty minutes at a time.   She could walk for maybe 300 feet, and then had to rest.   She could stand for about five minutes.   She did only light household chores such as folding laundry or dusting.   (Tr. 16-19). Since she got hurt at work, putting weight on her left leg caused shooting pains down her left side.

(Tr. 21).

A vocational expert (VE) also testified.   The ALJ asked her a hypothetical question which corresponded to the ultimate RFC findings.   The VE testified that this person could not do plaintiff's past work, but she could do sedentary jobs such as address clerk, account clerk, and telephone clerk.   (Tr. 24-25).

### 3.     Medical Records

A lumber MRI in October 2010 showed mild disc bulging at L3-4 and L4-5, as well as central disc protrusion abutting the left nerve root at L4-5.   (Tr. 389-390).   Plaintiff had back surgery in April 2011.   (Tr. 384).   She returned to work after the surgery.

A lumbar MRI in February 2012 showed slight progression of mild degenerative changes at L3 through S1, compared to the October 2010 MRI.   (Tr. 395-396).

Plaintiff's primary care provider was Jim Hong, M.D.   He diagnosed lumbago and sciatica in September 2009.   (Tr. 473).   In November 2011, Dr. Hong continued her prescriptions for fentanyl patch and Norco (hydrocodone and acetaminophen).   He noted that her job made her pain worse; she was in school "and hopefully she will find different work in the future."   (Tr. 475).

On July 5, 2012, Ms. Chapman reported to Dr. Hong that she had hurt her back lifting a heavy box at work three days earlier.   A worker's compensation doctor prescribed physical therapy and told her to return to work.   On exam, Dr. Hong noted normal straight leg raising and tenderness at the lumbar spine.   He gave her a slip to stay off work for three days and recommended physical therapy.   She was not to do any lifting for four weeks.   (Tr. 513-516).

In October 2012, Dr. Hong noted that plaintiff had suffered from back pain for about five years.   She had low back pain radiating into her thighs.   On exam, she had tenderness to palpation of the lumbar spine.   Sensory exam was normal, as was straight leg raising.   He started her on Nucynta for pain, and reduced the dosage of Norco.   (Tr. 579-582).   She returned four days later, stating that she was in pain and wanted to return to her previous medication regimen. Dr. Hong agreed to return her to the higher dosage of Norco.   (Tr. 584-587).

Plaintiff saw Dr. Rahul Rastogi at the Washington University Pain management Center on November 5, 2012, for complaints of bilateral lower extremity pain.   Her back pain was "minimal and controlled."   Among other medications, she was taking Norco, Naproxen and Gabapentin. On exam, she had pain with palpation in the lumbosacral region and a decreased range of motion of the lumbar spine.   Straight leg raising was negative.   He ordered an MRI.   If there were no surgical options, he recommended consideration of a spinal cord stimulator.   (Tr. 409-411).

On November 7, 2012, plaintiff told Dr. Hong that her worker's compensation claim had been denied.   She said she had a lifting restriction of ten pounds, but her job required lifting more than ten pounds.   Dr. Hong wrote, "She cannot lift more than 10 pounds at work and also she needs to take frequent break[s] from standing position, which work is not willing to allow her to do.   She is applying for short term disability now."   (Tr. 588-591).

A lumbar MRI on November 8, 2012, showed postsurgical changes of left L5 laminotomy with granulation tissue encasing the left S1 nerve root, and stable mild degenerative changes at L3 through S1.   (Tr. 392-393).

In January 2013, Dr. Rastogi noted that plaintiff had seen a surgeon, Dr. Santiago, who did not recommend surgery.   On exam, she again had tenderness and limited range of motion of the

lumbar spine.   Straight leg raising was positive.   Dr. Rastogi recommended a trial of a spinal cord stimulator.   (Tr. 413-415).   The trial of the stimulator gave her "significant relief."   (Tr. 436).   In February 2013, plaintiff's health insurer approved the placement of a permanent spinal nerve stimulator.   (Tr. 453).

In April 2013, plaintiff told Dr. Hong that she had slight improvement in her pain following the placement of the permanent neurostimulator.   (Tr. 618).   On May 1, 2013, Dr. Hong instructed her to cut down on her dosage of Norco as the stimulator was helping.   (Tr. 625).

On May 2, 2013, Dr. Rastogi noted that plaintiff reported "ongoing significant relief" from the neurostimulator.   She had no side effects from her medications.   However, her back pain had been exacerbated by a recent fall.   On exam, she had tenderness in the low back, but could flex to 90 degrees with no increased pain in the legs.   Range of motion of the legs was normal.   She was to continue taking her medications and to restart her home exercises.   If she continued to have tailbone pain, he would consider an injection in the caudal area.   (Tr. 646-649).

On May 31, 2013, plaintiff told Dr. Hong that the neurostimulator was "basically not helping" and she was "not ready to come down on pain meds yet."   She said she would be trained for some other kind of work that did not require lifting.   He refilled her prescriptions.   He wrote, "Very confusing situation with long term disability and work.   I told her that we need to have some goals here instead of continue [sic] to write off work notes without any solid plans.   She states that she already rewarded [sic] long term disability from her insurance company.   I gave her a letter for her to have 15 pounds weight restriction at work for now and let work decided [sic] what she should do."   (Tr. 627-630).

In June 2013, plaintiff told Dr. Hong that she was switching to a clerical positon at work. (Tr. 634).   He wrote a letter stating that she had a fifteen pound lifting restriction and she needed "clerical type of work where she does not need to stand and lift."   (Tr. 637).

In June 2013, at a visit with the Pain Management Center, the stimulator was reprogrammed to cover new areas of pain along the thighs.   She reported "ongoing significant relief" from the stimulator.   Dr. Rastogi gave her an injection for tailbone pain.   (Tr. 650-653). A month later, he noted that she was managing her pain with fentanyl patches and hydrocodone, prescribed by her primary care physician.   He cautioned against chronic use of narcotic medications.   (Tr. 657).

Dr. Rastogi continued to see plaintiff through June 2014.   His notes reflect complaints of continuing low back pain radiating into the buttocks and legs, and also that she reported "ongoing significant relief" from the nerve stimulator and that she was "very happy" with the results.   She also reported "significant benefit" from a series of caudal epidural steroid injections he administered.   (Tr. 658-666, 739-758, 782-804).

Plaintiff continued to see Dr. Hong regularly through April 2014.   She indicated to him that she had low back pain and sciatica in her left leg, and that the quality of pain had not changed. He continued to prescribe Norco and fentanyl patches.   (Tr. 719-738, 765-780).   In contrast to Dr. Rastogi's notes, according to Dr. Hong, she said that the injections did not help.   (Tr. 724, 765).   In December 2013, she told Dr. Hong that all efforts at improvement had failed, and she was going to school to train for a different job where she would not have to lift.   (Tr. 729).   He completed a "school accommodation form."   (Tr. 732).

Dr. Rastogi's last note is dated June 25, 2014.   He administered a caudal epidural steroid injection.   The indication for the procedure was "Low back pain with bilateral lower extremity radiation with coccygeal pain not covered by spinal cord stimulator.   Significant relief from last caudal for several weeks."   (Tr. 782).

## Analysis

Plaintiff's main argument is that the ALJ erred in assessing her credibility.

Throughout her brief, plaintiff relies upon cases from the Eighth and Ninth Circuits, which are, of course, not binding precedent here.

The Court must use an "extremely deferential" standard in reviewing an ALJ's credibility finding.   *Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013).   The Court cannot reweigh the facts or reconsider the evidence, and can upset the ALJ's finding only if it is "patently wrong." *Ibid*.   Social Security regulations and Seventh Circuit cases "taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from 'merely ignoring' the testimony or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding."   *Schmidt v. Barnhart*, 395 F.3d 737, 746-747 (7th Cir. 2005), and cases cited therein.

SSR 96-7p requires the ALJ to consider a number of factors in assessing the claimant's credibility, including the objective medical evidence, the claimant's daily activities, medication for the relief of pain, and "any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms." SSR 96-7p, 1996WL374186, at *3.[2]   While

---

[2] SSR 96-7p was superseded by SSR 16-3p, 2016WL1119029.   SSR 16-3p became effective on March 28, 2016, after the date of the ALJ's decision.   SSR 16-3p eliminates the use of the term "credibility," and clarifies that symptom evaluation is "not an examination of an individual's character."   2016WL1119029, at *1.   SSR 16-3p

plaintiff's claims cannot be rejected solely because they are not supported by objective evidence, 20 C.F.R. §404.1529(c)(2), the ALJ may take that fact into consideration, since "discrepancies between objective evidence and self-reports may suggest symptom exaggeration." *Getch v. Astrue*, 539 F.3d 473, 483 (7th Cir. 2008).

Here, ALJ Martin gave a number of reasons for her adverse credibility finding. (Tr. 36-37). First, plaintiff had experienced back pain for years before she stopped working in November 2012, suggesting that her back pain was not at a disabling level. She acknowledged that plaintiff had injured her back lifting a box at work, but pointed out that Dr. Hong described her back pain as "stable" in October 2012 and Dr. Rastogi described it as "minimal" that same month. (Tr. 36, referring to Tr. 579 and 329). The ALJ concluded that, because plaintiff's symptoms had been present at about the same level of severity while she had been working, her pain was not so severe as to disable her from doing all work. In addition, Dr. Rastogi's records indicated that the neurostimulator and steroid injections gave her significant relief. Further, plaintiff told Dr. Hong in December 2013 that she was going to school so she could get a job that did not require lifting, suggesting that plaintiff believed that she could do some kind of work. And, while Dr. Hong did not think she could do her past work, he thought she would be able to do a clerical type job.

In support of her argument that her pain worsened and became disabling in November 2012, plaintiff emphasizes that the MRI from that month showed granulation tissue encasing the left S1 nerve root. That is, of course, accurate, but it means little in isolation. As the ALJ pointed out, Dr. Rastogi's notes reflect that treatment subsequent to November 2012 afforded plaintiff significant pain relief. Plaintiff's brief seems to suggest that the MRI documents "an

continues to require the ALJ to consider the factors set forth above, which are derived from the applicable regulations. 2016WL1119029, at *5.

injury," but that suggestion is not supported by any of the medical evidence in the record.   No doctor ever explained whether the granulation tissue was the result of an injury or was the result of tissue healing following plaintiff's back surgery.   The wording of the MRI report suggests the latter, as it refers to postsurgical changes.

Plaintiff argues that the ALJ's emphasis on the good results from the neurostimulator is countered by medical records reflecting continued treatment for pain.   This argument misses the mark.   The issue is not whether plaintiff had pain, it is whether her pain was so severe as to preclude all work.   The ALJ accepted that plaintiff continued to have pain.   She wrote, "It is evident that the claimant suffers from chronic pain."   (Tr. 38).   That is why the ALJ restricted her to a limited range of sedentary work, which is the least demanding of all levels of work.

Plaintiff also argues that her complaints were supported by objective evidence.   Citing an Eighth Circuit case, she posits that a consistent diagnosis of chronic pain coupled with pain management and drug therapy is objective evidence.   Doc. 21, pp. 5-6.   However, again, an Eighth Circuit case is not precedential in this district.

Lastly, plaintiff argues that the ALJ failed to properly consider the SSR 96-7p factors, which she refers to as the *Polaski* factors after an Eighth Circuit case of that name.   Doc. 21, p. 7. She is incorrect.   ALJ Martin's decision indicates that she considered the appropriate factors. Plaintiff complains that the ALJ improperly considered her daily activities.   However, the ALJ did not improperly equate plaintiff's activities with an ability to work full time.

Plaintiff seems to be suggesting that it is always error for the ALJ to remark upon a claimant's daily activities.   This is not the case.   An ALJ is required to consider, among other factors, a claimant's daily activities in determining whether she is disabled.   20 C.F.R.

§404.1529(a), SSR 96-7p, 1996WL374186, at *3.   While it may be error to equate limited daily activities with the ability to work full-time, it is not error to consider daily activities; in fact, it is proper for an ALJ to consider a conflict between the plaintiff's claims about what she can do and the evidence as to her activities.   See, *Pepper v. Colvin*, 712 F.3d 351, 369 (7th Cir. 2013).

For her second point, plaintiff argues that the opinion of a nonexamining state agency consultant cannot provide substantial support for an RFC determination.   She cites *Jenkins v. Apfel*, 196 F.3d 922 (8th Cir. 1999).    That case is not precedential in this district, and it would not help plaintiff even if it were.   In *Jenkins*, the issue was whether the consultant's opinion was outweighed by the conflicting opinion of a treating physician.   *Jenkins*, 196 F.3d at 924-925. Here, there is no such conflicting opinion.   Dr. Hong was of the opinion that plaintiff would be able to do a clerical job that did not require lifting or standing for long periods.

In sum, plaintiff's arguments are nothing more than an invitation for this Court to reweigh the evidence, which is far beyond the scope of judicial review.   Even if reasonable minds could differ as to whether Ms. Chapman was disabled at the relevant time, the ALJ's decision must be affirmed if it is supported by substantial evidence, and the Court cannot make its own credibility determination or substitute its judgment for that of the ALJ in reviewing for substantial evidence. *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012); *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008).

## Conclusion

After careful review of the record as a whole, the Court is convinced that ALJ Martin committed no errors of law, and that her findings are supported by substantial evidence. Accordingly, the final decision of the Commissioner of Social Security denying Melissa

Chapman's application for disability benefits is **AFFIRMED**.

The clerk of court shall enter judgment in favor of defendant.

**IT IS SO ORDERED.**

**DATE:**  3/16/2017

*s/J. Phil Gilbert*_____
**J. PHIL. GILBERT**
**U.S. DISTRICT JUDGE**